IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PATRICK JAYSON REENERS,          )
                                 )
        Plaintiff,               )
                                 )
v.                               )        No. 3:15-cv-0625
                                 )
RICKY TROUP *et al.*             )        Judge Trauger
                                 )        Magistrate Judge Brown
        Defendants.              )


<u>REPORT AND RECOMMENDATION</u>

To:   The Honorable Aleta A. Trauger

     Plaintiff Patrick Jayson Reeners filed this *pro se* action under
42 U.S.C. § 1983. Judge Trauger granted the plaintiff leave to proceed
*in forma pauperis* and referred the matter to the undersigned. The
Court's first order of business is to conduct an initial review of the
complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

I.   **Standard of Review**

     Section 1915(e) pertains to any action filed *in forma pauperis*
and provides that the Court must dismiss any such action, at any time,
if the Court determines that the action is frivolous or malicious,
fails to state a claim for which relief may be granted, or seeks
monetary relief against a defendant who is immune from such relief. 28
U.S.C. § 1915(e)(2)(B). In assessing whether the complaint states a
claim on which relief may be granted, the Court applies the same
analysis that applies to a motion to dismiss filed under Rule 12(b)(6)
of the Federal Rules of Civil Procedure, as construed by *Ashcroft v.
Iqbal*, 556 U.S. 662, 678-79 (2009), and *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555–57 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that "the dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under [§ 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)"). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks and citation omitted).

## II. Factual Allegations

In the instant complaint, the plaintiff names as defendants Ricky Troup, Donald Bandy, Lamar Ballard, City of Gallatin, Sumner County Medical Center ("SCMC"), Middle Tennessee Mental Health Institute ("MTMHI"), Volunteer Behavioral Health Services[1] ("VBHS"), and "John Doe." The plaintiff asserts that Ricky Troup, Lamar Ballard, and John Doe were, at all material times, employed as police officers by the City of Gallatin, Tennessee, and that Donald Bandy was employed as the chief of police. He avers that SCMC acted under "color of state law,"

---

[1] In the complaint header, this defendant is identified as "Volunteer Behavior Health," but in the body of the complaint it is identified as Volunteer Behavioral Health Services.

that VBHS was a non-profit organization receiving state funding and acting as "interrogator for police" and therefore "acting under color of state law," and that MTMHI likewise acted as a "Facilitator of state law, and was acting under color of state law." (ECF No. 1, at 3.)

Based on the plaintiff's allegations, it appears that he was confronted and taken into custody at his home and then involuntarily committed to a mental health facility, where he was detained against his will for six days. More specifically, the plaintiff alleges that on June 12, 2014, he was confronted at his residence by eight Gallatin Police Officers including Ricky Troup, Lamar Ballard, and an unknown officer or officers referred to as "John Doe." Emily Cecil from VBHS was with the police officers. The plaintiff was told that he needed to speak with Emily Cecil. The plaintiff cooperated because he feared being arrested if he did not cooperate. However, instead of merely speaking with Emily Cecil, the plaintiff was taken into custody by Officer John Doe who placed the plaintiff in hinged handcuffs, behind his back. The plaintiff's wrist was allegedly injured in the process, even though the plaintiff was cooperating.

The plaintiff was first transported to SCMC where he was supposed to receive an "evaluation." The plaintiff never underwent any type of evaluation by a "State Certified Physician" at SCMC. Instead, his right hand was x-rayed, which revealed a fracture. The plaintiff did not receive treatment for this fracture, however. After waiting for two hours, still handcuffed, the plaintiff demanded to be released. In

response, SCMC staff assaulted the plaintiff by administering drugs that rendered him unconscious.

While unconscious, the plaintiff was transported to MTMHI. Because the plaintiff remained unconscious, an immediate psychiatric evaluation could not be performed. Upon awakening the next morning, the plaintiff was in pain and confused about his surroundings. He requested medical attention for his fractured hand or wrist and was told he would see a doctor later. The plaintiff also asked for information regarding his whereabouts and the legal basis for his detention. The plaintiff was told that he would see a doctor later and that he should ask her these questions.

Later the same morning, the plaintiff spent about three minutes with a psychiatrist. He asked her about the pain, his placement, and the legal documents authorizing his detention. He also requested that he be permitted to call a lawyer. The doctor told him to speak with his case worker.

The plaintiff met with a case worker, who denied him access to any documentation authorizing his detention and denied his request to speak to an attorney or to be brought before a judge.

The plaintiff was finally released from involuntary detention six days later, on June 18, 2014. He was heavily sedated even at the time of his release. He was also missing $750 dollars. It is unclear when or if he received treatment for his fractured wrist.

Based on these factual allegations, the plaintiff asserts in Count I a claim against the "defendants," generally, under 42 U.S.C. § 1983, asserting violations of his federal constitutional rights by

persons acting under color of state law. Specifically, the plaintiff asserts that the defendants' actions violated his rights to due process; to be free from unreasonable searches and seizures; to be free from the use of excessive force; to be free from false arrest; and to be compensated for the taking of property.

In Count II, the plaintiff asserts a claim under § 1983 against Police Chief Donald Bandy, alleging that this defendant implemented or adopted policies that led to the plaintiff's being "drugged, and terrorized in a Mental Hospital." (ECF No. 1, at 7.) He further alleges that Bandy and the City of Gallatin failed to adequately train and supervise the individual police officers of the Gallatin police force, and that such failure amounts to deliberate indifference to the plaintiff's rights to be free from the use of excessive force and unreasonable seizures.

In Count III, the plaintiff asserts a separate claim against the City of Gallatin, asserting that policies or procedures of the City of Gallatin allowed the use of excessive force when other more reasonable and less drastic measures are available.

Count IV asserts a specific claim of false arrest and detention against defendants Ricky Troup, John Doe, Lamar Ballard, SCMC, and VBHS.

Count V asserts a claim against John Doe "in concert with other Defendants at the scene" for stealing $750 from the plaintiff "in violation of the Fifth and Fourteenth Amendments" (ECF No. 1, at 9), and for using excessive force against the plaintiff when he was "non violent and cooperative," by fracturing the plaintiff's wrist in the

course of putting hinged handcuffs on him, and then failing to treat the plaintiff's wrist thereafter. The plaintiff also states that defendant Troup knowingly gave false information about the plaintiff to "Crisis," thereby causing the plaintiff severe emotional distress.

Counts VI through XI set forth Tennessee state-law claims for false imprisonment, negligence, negligent supervision, conspiracy, conversion, and assault.

The plaintiff seeks relief in the form of compensatory and punitive damages, costs and attorney fees.

## III. Discussion

This Court's jurisdiction is premised upon 28 U.S.C. § 1331, as the plaintiff asserts claims arising under federal law, specifically, 42 U.S.C. § 1983. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983. For purposes of the initial review, the Court must accept as true the plaintiff's version of the facts.

Police officers Ricky Troup, Donald Bandy, Lamar Ballard, and the unknown defendant or defendants referred to as "John Doe," as police

officers, are clearly persons acting under color of state law for purposes of claims under § 1983. The plaintiff asserts that these individuals engaged in false arrest and false imprisonment when they arrested him and took him into custody without probable cause or a warrant. To prevail on a false arrest claim and false imprisonment claim under the Fourth Amendment, a plaintiff must show that he was arrested without probable cause and detained without legal process. *Wallace v. Kato*, 549 U.S. 384, 391 (2007). The plaintiff's allegations against Troup, Ballard, and John Doe, if true, support claims of arrest and detention without probable cause or legal process and therefore state claims under § 1983, for purposes of the initial review.

Insofar as the plaintiff allege facts that suggest that his improper arrest and unlawful detention were caused by the implementation of unconstitutional policies by Chief Bandy and the City of Gallatin, the Court finds that the complaint adequately states claims against Chief Bandy in his individual capacity and official capacity and against the City of Gallatin, based on the plaintiff's involuntary commitment to a mental institution, allegedly for no cause and without legal process. Likewise, the plaintiff states a colorable false-imprisonment claim against MTMHI based on his allegedly unlawful six-day detention.

Regarding SCMC, the plaintiff alleges only that he was taken first to this hospital; his hand was x-rayed; he did not receive an appropriate "evaluation"; and that he was "assaulted" and medicated by unidentified members of SCMC staff. SCMC is not alleged to have been

responsible for the allegedly unlawful arrest or detention. The Court finds that the plaintiff does not state a colorable claim under 42 U.S.C. § 1983 against SCMC. However, the plaintiff potentially asserts state-law claims against SCMC, over which the Court has supplemental jurisdiction.

Regarding VBHS, the plaintiff alleges only that this defendant acted under color of law and "participated" in the plaintiff's false arrest. However, an entity cannot be liable under § 1983 for actions taken by its employees on a *respondeat superior* theory. *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). The plaintiff does not name Emily Cecil as a defendant and does not allege with any specificity what acts she or VBHS might have done that violated his constitutional rights or gave rise to a claim under state law. The Court finds that the complaint should be dismissed as to defendant VBHS on the grounds that it fails to state a claim for which relief may be granted, under federal or state law.

IV. **Conclusion and Recommendation**

For the reasons set forth herein, the Magistrate Judge finds that the plaintiff states colorable claims under 42 U.S.C. § 1983 and state law against defendants Ricky Troup, Donald Bandy, Lamar Ballard, "John Doe," City of Gallatin, and Middle Tennessee Mental Health Institute, and supplemental state-law claims against defendant Sumner County Medical Center. A separate order will enter regarding service of process against these defendants.

The Magistrate Judge further **FINDS**, however, that the allegations in the complaint fail to state a colorable claim against defendant

Volunteer Behavioral Health Services and therefore **RECOMMENDS** that the claims against this defendant be dismissed.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the district court's order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 147-50 (1985) (affirming the appellate court's holding that failure to file an objection to the magistrate judge's report constitutes a waiver); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

/s/ Joe B. Brown
**JOE B. BROWN**
**United States Magistrate Judge**