IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| PATRICK REENERS, | ) | |
|     *Plaintiff*, | ) | Civil Action No: 3:15-cv-00625 |
| | ) | |
| v. | ) | JURY DEMAND |
| | ) | |
| RICKEY TROUP, *et al.* | ) | Judge Trauger |
|     *Defendants*. | ) | Magistrate Judge Brown |

## FIFTH AMENDED COMPLAINT

Comes now Plaintiff, by and through counsel, and submits this Fifth Amended Complaint. Plaintiff would show:

1. Plaintiff Patrick Reeners brings this civil rights action for damages against Defendants Rickey Troup, Donald Bandy, Lamar Ballard, City of Gallatin, Tennessee, Bradley Jones, and Jamie Helson.

## PARTIES

2. Plaintiff Patrick Reeners ("Mr. Reeners") is an adult resident of Gallatin, Tennessee.

3. Defendant City of Gallatin, Tennessee is the municipal government for Gallatin, Tennessee.

4. Defendant Donald Bandy ("Chief Bandy") is a resident of Gallatin, Tennessee and is the Chief of Police for the Gallatin Police Department.

5. Defendant Ricky Troup ("Lieutenant Troup") is a resident of Gallatin, Tennessee and is a Lieutenant with the Gallatin Police Department.

6. Defendant Lamar Ballard ("Lieutenant Ballard") is a resident of Gallatin, Tennessee and is a Lieutenant with the Gallatin Police Department.

7. Defendant Bradley Jones ("Officer Jones") is a resident of Gallatin, Tennessee and is an officer with the Gallatin Police Department.

1

8. Defendant Jamie Helson ("Corporal Helson") is a resident of Gallatin, Tennessee and is an officer with the Gallatin Police Department.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the Tennessee state law claims pursuant to 28 U.S.C. § 1367. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because all claims related to this case occurred in this district.

## FACTUAL BACKGROUND

10. Mr. Reeners is a civil activist who spends a significant proportion of his life advocating for social welfare causes.

11. Mr. Reeners has thoroughly researched the issue of fluoridated public water supplies and, based on his research, has concluded that fluoridated water is a threat to public health.

12. For the past several years, Mr. Reeners has attempted to convey information about the dangers of fluoridated water to the City of Gallatin and the Gallatin Police Department, and has made numerous open records requests regarding the fluoridation of public water.

13. On June 12, 2014, Gallatin Police Lieutenant Ricky Troup contacted the Mobile Crisis Hotline and asked that a mental assessment be conducted on Mr. Reeners because of his anti-fluoride activities.

14. On information and belief, Gallatin Police Chief Donald Bandy knew and approved of Lt. Troup's call to Mobile Crisis.

15. At approximately 3:00 P.M. that same day, Lieutenant Troup, Lieutenant Ballard, Corporal Helson, and Officer Jones of the Gallatin PD went with Ms. Emily Cecil, a case worker with Volunteer Behavioral Health Services ("VBHS"), to Mr. Reeners' residence and confronted him there.

16. On information and belief, Gallatin Police Chief Donald Bandy knew and approved of his lieutenants and officers going to Mr. Reeners's home with Ms. Cecil.

17. Mr. Reeners did not threaten or harm anyone prior to this intervention, nor did the police have any reason to believe that Mr. Reeners was about to threaten or harm anyone.

18. Instead, the sole purpose of the intervention was to attempt to get Mr. Reeners to accept mental health treatment and give up the fluoride issue.

19. Lieutenant Troup, Lieutenant Ballard, Corporal Helson, and Officer Jones stood by in Mr. Reeners's yard while Ms. Cecil interviewed him on the porch for the next two hours.

20. Mr. Reeners remained calm and lucid throughout the encounter.

21. Mr. Reeners did not make any threats to harm himself or others during this conversation.

22. Mr. Reeners did not act out violently during the interview, or otherwise give any indication that he was an imminent danger to the physical safety of himself or others.

23. Mr. Reeners spoke with Ms. Cecil for about an hour.

24. Ms. Cecil attempted to convince Mr. Reeners to agree to attend mental health counseling.

25. Mr. Reeners did not agree to attend mental health counseling, but did agree to drop the fluoride issue with regard to the City of Gallatin.

26. Mr. Reeners then spoke with the officers for about half an hour, discussing other ways that he could help the community instead of pursuing the fluoride issue.

27. Mr. Reeners remained calm and lucid throughout this discussion with the officers.

28. The officers then informed Mr. Reeners that they were taking him to the emergency room for a mental evaluation, and that he had no choice but to comply.

29. Mr. Reeners cooperated with the officers and submitted to the arrest.

30. Officer Jones physically put the handcuffs on Mr. Reeners.

31. Mr. Reeners told Officer Jones that his wrist was sore, and asked that his hands be cuffed in front of him.

32. Ignoring Mr. Reeners's concerns, Officer Jones cuffed Mr. Reeners's hands behind him and twisted them, inflicting pain on Mr. Reeners.

33. Officer Jones and Corporal Helson escorted Mr. Reeners to their patrol car, placed him in the back, and transported him to Sumner Regional Medical Center ("SRMC").

34. On information and belief, Chief Bandy was aware and approved of his officers' decision to arrest and transport Mr. Reeners to SRMC.

35. Jones and Helson left Mr. Reeners' hands cuffed behind his back throughout the trip.

36. Mr. Reeners experienced continuous pain from the handcuffs.

37. Jones, Helson, and Reeners arrived at the SRMC ER at 4:55 P.M.

38. Mr. Reeners attempted to explain to the staff at SRMC that he had no mental health history and that he was being forcibly kidnapped by the police.

39. The Gallatin Officers and Ms. Cecil convinced the SRMC staff to admit Mr. Reeners on an involuntary basis.

40. Mr. Reeners continued complaining about the pain from the cuffs.

41. At about 5:15 P.M., in response to Mr. Reeners's complaints of pain from the cuffs, Officer Jones moved Mr. Reeners's hands to the front. However, Officer Jones still refused to take the cuffs off altogether.

42. At 5:55 P.M., SRMC staff forcibly medicated Mr. Reeners with Zyprexa, an anti-psychotic medication, and Ativan, a benzodiazepine-based anti-anxiety medication.

43. Mr. Reeners was held against his will in the SRMC ER for the next nine hours, frequently complaining about being detained and begging to be released. He also continued complaining about the pain inflicted on him by the handcuffs.

44. Officer Jones stayed with Mr. Reeners at SRMC until about 6:30 P.M., at which point Officer Darren Rager substituted in to help Corporal Helson keep Mr. Reeners restrained.

45. Corporal Helson and Officer Rager kept Mr. Reeners's hands cuffed until about 9:30 P.M., when the SRMC staff told them to take the cuffs off.

46. At 9:39 P.M., SRMC staff x-rayed Mr. Reeners' wrist and found that it was fractured. SRMC staff then gave Mr. Reeners a dose of Norco, an opioid-based pain-killer.

47. At 11:35 P.M., SRMC staff forcibly injected Mr. Reeners with Geodon (a psychotropic medication) and Versed (a sedative), knocking him unconscious.

48. At 1:52 A.M., Mr. Reeners was transported, still unconscious, from SRMC to Middle Tennessee Mental Health Institute ("MTMHI").

49. MTMHI Doctor Brooks accepted Mr. Reeners into MTMHI custody, and at 3:00 A.M. completed an initial psychological assessment of him.

50. Dr. Brooks's assessment found that Mr. Reeners posed no risk of violence to others, and only low risk of self-harm.

51. Regardless, MTMHI accepted Mr. Reeners on an involuntary commitment.

52. Mr. Reeners did not awaken from the sedatives until the morning of the 13th.

53. On June 13th, Chief Bandy faxed a letter to MTMHI asking that Reeners be held there to receive "in-depth psychological assessments and treatments" in order to resolve his fluoride "obsession." (Exhibit A, Chief Bandy Letter).

54. Mr. Reeners was held against his will at MTMHI for the next six days and was forced to take oral psychotropic medications.

55. Mr. Reeners never saw a judge during his six-day involuntary commitment. He was scheduled for a judicial hearing on June 18, 2014, but was released from MTMHI that morning, prior to the hearing.

# CLAIMS FOR RELIEF

## COUNT I: FALSE ARREST ON JUNE 12, 2014 IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C § 1983)

### (DEFENDANTS TROUP, BALLARD, HELSON, JONES, AND CITY OF GALLATIN)

56. Plaintiff re-alleges and incorporates Paragraphs 1 – 55 above by reference.

57. The Gallatin Police Officers falsely arrested Mr. Reeners on June 12, 2014. Mr. Reeners had not committed any crime, and did not meet Tennessee state law criteria to be taken into custody for purposes of an involuntary mental evaluation.

58. The officers were operating under color of state law when they arrested Mr. Reeners.

59. The false arrest deprived Mr. Reeners of his liberty.

60. The officers acted in reckless disregard of Mr. Reeners's rights.

61. On information and belief, Gallatin Police Chief Bandy was aware of and officially sanctioned the arrest.

62. On information and belief, prior to this incident the City of Gallatin failed to train its police force on the law governing involuntary mental health detentions.

63. By failing to train its police force on the law governing involuntary mental health detentions, the City was deliberately indifferent to the risk that its officers would end up arresting someone for an involuntary mental health evaluation without probable cause.

64. The City's failure to train its officers on the law governing involuntary mental health detentions was one of the causes of the illegal mental health detention of Mr. Reeners.

65. Mr. Reeners suffered damages from the false arrest due to loss of liberty, emotional distress, injury to his wrist caused by the handcuffs, and SRMC medical bills.

## COUNT II: FALSE ARREST ON JUNE 12, 2014 IN VIOLATION OF TENNESSEE STATE COMMON LAW
### (TENNESSEE COMMON LAW)

### (DEFENDANTS TROUP, BALLARD, HELSON, AND JONES)

66. Plaintiff re-alleges and incorporates Paragraphs 1 – 55 above.

67. The Gallatin Police Officers falsely arrested Mr. Reeners on June 12, 2014. Mr. Reeners had not committed any crime, and did not meet Tennessee state law criteria to be taken into custody for purposes of a mental evaluation.

68. The false arrest deprived Mr. Reeners of his liberty.

69. The false arrest was in reckless disregard of Mr. Reeners's rights.

70. Mr. Reeners suffered damages from the false arrest due to his loss of liberty, emotional distress, injury to his wrist caused by the handcuffs, and SRMC medical bills.

## COUNT III: EXCESSIVE FORCE ON JUNE 12, 2014 IN VIOLATION OF THE FOURTH AMENDMENT
### (42 U.S.C § 1983)

### (DEFENDANT JONES AND CORPORAL HELSON)

71. Plaintiff re-alleges and incorporates Paragraphs 1 – 55 above by reference.

72. Officer Jones unnecessarily handcuffed Mr. Reeners's hands behind his back notwithstanding Mr. Reeners's complaints of pain from the cuffs.

73. Officer Jones and Corporal Helson unnecessarily kept Mr. Reeners's hands cuffed while he was at SRMC, notwithstanding Mr. Reeners's ongoing complaints of pain.

74. Officer Jones and Corporal Helson were acting under color of state law.

75. Mr. Reeners suffered unnecessary pain and injury due to Jones and Helson's excessive use of force, and has lost income since the incident due to the effect of the wrist fracture.

## COUNT IV: FALSE ARREST FROM JUNE 13, 2014 – JUNE 18, 2014 IN VIOLATION OF THE FOURTH AMENDMENT
## (42 U.S.C § 1983)

### (DEFENDANTS BANDY AND CITY OF GALLATIN)

76. Plaintiff re-alleges and incorporates Paragraphs 1 – 55 above by reference.

77. Chief Bandy was the final policymaker for the City of Gallatin with regard to matters of law enforcement.

78. On information and belief, Chief Bandy wanted Mr. Reeners to be committed on an involuntary basis for mental health treatment, and directed his subordinates to call Mobile Crisis and initiate an intervention that would lead to that outcome.

79. On June 13, 2014, Chief Bandy urged MTMHI to detain Mr. Reeners for "in-depth psychological treatment" in order to resolve his fluoride "obsession."

80. MTMHI did in fact involuntarily detain Mr. Reeners until June 18th, notwithstanding Dr. Brooks's initial assessment that Mr. Reeners posed no risk of violence to others and only low risk of self-harm.

81. The illegal involuntary commitment to MTMHI deprived Mr. Reeners of his liberty.

82. The Defendants were operating under color of state law.

83. Chief Bandy acted in reckless disregard of Mr. Reeners's rights.

84. The involuntary commitment damaged Mr. Reeners by depriving him of liberty, inflicting emotional distress, and causing him to lose income while he was detained.

## COUNT V: FALSE IMPRISONMENT FROM JUNE 13, 2014 – JUNE 18, 2014 IN VIOLATION OF TENNESSEE STATE LAW
## (TENNESSEE COMMON LAW)

### (DEFENDANT BANDY)

85. Plaintiff re-alleges and incorporates Paragraphs 1 – 55 above by reference.

86. On information and belief, Chief Bandy wanted Mr. Reeners to be committed on an involuntary basis, and directed his subordinates to call Mobile Crisis and initiate an intervention that would lead to that outcome.

87. On June 13, 2014, Chief Bandy urged MTMHI to detain Mr. Reeners for "in-depth psychological treatment" in order to resolve his fluoride "obsession."

88. MTMHI did in fact involuntarily detain Mr. Reeners until June 18th, notwithstanding Dr. Brooks's initial assessment that Mr. Reeners posed no risk of violence to others and only low risk of self-harm.

89. The illegal involuntary commitment deprived Mr. Reeners of his liberty.

90. The Defendants were operating under color of state law.

91. Chief Bandy acted in reckless disregard of Mr. Reeners' rights.

92. The involuntary commitment damaged Mr. Reeners by depriving him of liberty, inflicting emotional distress, and causing him to lose income while he was detained.

### REQUEST FOR RELIEF

**WHEREFORE**, these premises considered, Plaintiff prays:

1. That the Defendants Answer this Complaint within the time provided by law.

2. That this cause be tried by a jury.

3. That judgment for Plaintiff enter against the Defendants on each count.

4. That Plaintiff be awarded nominal damages against the Defendants on all counts.

9

5. That Plaintiff be awarded compensatory damages against the Defendants in an amount to be determined by the jury.

6. That Plaintiff be awarded punitive damages against Defendants Bandy, Troup, Ballard, Jones, and Helson in amounts to be determined by the jury.

7. That Defendants be ordered to compensate Plaintiff's attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).

8. That the court costs in this matter be taxed to Defendants.

9. That Plaintiff be awarded pre- and post-judgment interest against Defendants.

10. That Plaintiff be awarded all other relief to which it may appear he is entitled in the interests of justice.

Respectfully submitted,

/s *Kyle Mothershead*
Kyle Mothershead, BPR 22953
414 Union Street, Suite 900
Nashville, TN 37219
T: (615) 982-8002 / F: (615) 229-6387
E: kyle@mothersheadlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on **November 17, 2016** a copy of the foregoing **Fifth Amended Complaint** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including **Mark McGrady** and **William Bates**, counsels for the Defendants. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953