## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **PATRICK JAYSON REENERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:15-cv-0625** |
| | ) | **Judge Aleta A. Trauger** |
| **RICKY TROUP et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM & ORDER</u>

Magistrate Judge Joe Brown entered a Report and Recommendation ("R&R") (Doc. No. 177) recommending that the defendants' Motion for Summary Judgment (Doc. No. 121) be granted in part and denied in part. Now before the court are the defendants' Motion for Review (Doc. No. 184) of that portion of the R&R recommending denial of summary judgment and the plaintiff's Partial Objection (Doc. No. 185) to that portion of the R&R recommending that summary judgment be granted in part. The court stayed the filing and briefing of objections while the parties attempted to reach a settlement agreement. Those attempts were ultimately unfruitful, and both parties' objections to the R&R have now been fully briefed and are ripe for review.

Having reviewed the parties' objections in light of the record as a whole and the governing legal standards, for the reasons set forth herein, the court will overrule both parties' objections and adopt the findings and recommendations set forth in the R&R in their entirety.

## I.    Procedural Background and Factual Overview

In the Fifth Amended Complaint (Doc. No. 169), plaintiff Patrick Reeners brings claims

under 42 U.S.C. § 1983 and state law against four individual officers with the Gallatin Police Department ("GPD"), including defendants Rickey Troup, Lamar Ballard, Bradley Jones, and Jamie Helson (collectively, the "individual defendants" or "officer defendants"), the GPD Chief of Police Donald Bandy, and the City of Gallatin. More specifically, he asserts claims of false arrest under § 1983 and Tennessee common law against the individual defendants (Counts I and II), a claim under § 1983 against defendants Jones and Helson based on the alleged use of excessive force (Count III), a § 1983 false arrest claim against Chief Bandy and the City of Gallatin (Count IV), and a Tennessee common law false imprisonment claim against Bandy only (Count V). The claims all stem from an incident that took place on June 12, 2014, when Reeners was forcibly taken into custody, transported first to Sumner Regional Medical Center ("SRMC") and later to the Middle Tennessee Mental Health Institute ("MTMHI"), where he was involuntarily committed until June 18, 2014.

On August 3, 2016, the defendants filed their Motion for Summary Judgment (Doc. No. 121), asserting that the individual defendants and Chief Bandy were entitled to qualified immunity from suit and that the City of Gallatin was entitled to summary judgment because the plaintiff could not show that a constitutional violation occurred. The defendants later agreed to withdraw from the motion any argument that the municipal liability claims against the City of Gallatin should be dismissed, leaving for resolution only the issue of whether the claims against the officer defendants and Chief Bandy should be dismissed. (*See* Doc. No. 174.) Although discovery was partially stayed pending disposition of the qualified-immunity issue, the motion was fully briefed, and both parties submitted a substantial amount of evidence in support of their positions, including affidavits, medical records, transcripts of the recordings of various conversations, and other documents.

The R&R, issued on August 11, 2017, includes a detailed summary of the factual record, which the court adopts in full and will not reiterate here. The R&R ultimately recommends that:

> (1) summary judgment on the basis of qualified immunity to Counts I and II be denied because (a) the plaintiff had a clearly established right not to be seized and detained for a psychiatric evaluation unless the seizing officers had probable cause to believe that he posed a danger to himself or others; and (b) a reasonable factfinder, construing the facts in the plaintiff's favor, could find that the officer defendants lacked probable cause to seize the plaintiff;

> (2) summary judgment on the basis of qualified immunity to Count III be denied because (a) "unduly tight or excessively forceful handcuffing is a clearly established violation of the Fourth Amendment," *Baynes v. Cleland*, 799 F.3d 600, 613 (6th Cir. 2015); and (b) a reasonable finder of fact could conclude defendants Jones and Helson subjected Reeners to excessive force when they handcuffed him for transportation to SRMC and thereafter kept him in handcuffs; and

> (3) summary judgment as to Counts IV and V against Bandy be granted on qualified immunity grounds, as the plaintiff failed to point to evidence in the record to support his claim that Bandy had any input in the decision to commit Reeners at MTMHI or keep him there until June 18, 2014.

The defendants thereafter filed objections only to the recommendation that summary judgment be denied as to Counts I and II. They do not expressly object to the recommendation that summary judgment on the excessive force claim be denied. For his part, the plaintiff objects to the recommendation that the claims against Bandy be dismissed.

## II.     Standard of Review

Generally, unless an extension is granted, any party has fourteen days after being served with a report and recommendation to "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). When reviewing an R&R on a dispositive motion, as here, the district court must review *de novo* any portion of the "magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive

further evidence; or return the matter to the magistrate judge with instructions." *Id.*

The court may decline to review any objections that are not sufficiently specific "to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) (citing *Miller*, 50 F.3d at 380).

Further, several circuits have held that "arguments not made before a magistrate judge are normally waived." *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000); *see also, e.g.*, *Williams v. McNeil*, 557 F.3d 1287, 1288 (11th Cir. 2009) (holding that the district court has the discretion to not consider an argument not presented to the magistrate judge); *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000) (same); *Madol v. Dan Nelson Auto. Group*, 372 F.3d 997, 1000 (8th Cir. 2004) (a party must present all claims to the magistrate judge to preserve them for review); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988) (same). Although the Sixth Circuit has not squarely addressed this issue, it has "indicated that a party's failure to raise an argument before the magistrate judge constitutes a waiver." *The Glidden Co. v. Kinsella*, 386 F. App'x 535, 544 n.2 (6th Cir. 2010) (citing *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).

## III. The Defendants' Objections

The defendants object to the magistrate judge's conclusion that the individual officers are not entitled to qualified immunity. The grounds for the objection are not clearly articulated, but the court construes the Motion for Review as arguing that the magistrate judge's reasoning was

flawed because:

> (1) probable cause in this context only required "a probability or substantial chance of dangerous behavior, not an actual showing of such behavior" (Doc. No. 184, at 9 (quoting *Fisher v. Harden*, 398 F.3d 837, 843 (6th Cir. 2005);

> (2) the individual officers had a reasonable basis for relying on the opinion of Emily Cecil in deciding to take the plaintiff under custody and force him to obtain a mental health assessment (Doc. No. 184, at 10); and

> (3) the magistrate judge made flawed or unsupported factual findings to reach the conclusion that the officers were not entitled to qualified immunity. More specifically, they argue that:

>> (i) The information provided by the officers to Emily Cecil was not untruthful and did not exaggerate the possibility that Reeners was a threat. Moreover, "there is ample evidence that Reeners placed others in reasonable fear of violent behavior and serious physical harm [and] that Officer Troup presented this information to Emily Cecil." (Doc. No. 184, at 12.)

>> (ii) The officer defendants "had probable cause to believe there was a 'probability' that Reeners was a threat based on the opinion of Emily Cecil, who in the eyes of a reasonable officer was reliable," and "[n]o reasonable officer would second guess the opinion of a trained mental health professional." (*Id.* at 12–13.)

>> (iii) The magistrate judge erred in "seemingly taking judicial notice" of the fact that the police "would not use a mentally unstable person as an informant" and erred in concluding that the conversation between Reeners and the police about his becoming a confidential informant constituted proof that Reeners was not a threat to himself or others. (*Id.* at 13.)

>> (iv) The magistrate judge erred in failing to give any weight to the medical doctors' decisions to sign off on Reeners' involuntary commitment. (*Id.*)[1]

The court has reviewed *de novo* the entirety of the factual record in this case in light of these

---

[1] The defendants also appear to take issue with the magistrate judge's recitation of the material facts insofar as the statement of facts omitted reference to "social media postings by Reeners about children being armed to kill their parents for poisoning them with fluoride and parents deserving to be murdered for poisoning their children with fluoride" (Doc. No. 184, at 3 n.3) and to "prior emails from Rosemary Bates about her prior emails to the Police Department expressing her concerns that Reeners behavior was escalating and he might 'snap' and 'act out'" (id. at 4 n.5). The court finds that these matters are not material. Moreover, because the issues were raised in footnotes rather than in the text of the objections, the court will not presume that they are actually objections and declines to address them as such.

objections, as well as the law upon which the magistrate judge's recommendations are based, and finds no error in the magistrate judge's assessment of the evidence or the application of the legal standards.

With respect to the first objection, the magistrate judge correctly recited the standard as requiring "only a 'probability or substantial chance' of dangerous behavior, not an actual showing of such behavior." (*See* Doc. No. 177, at 17 (quoting *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997)).) The magistrate judge then properly applied that standard to the facts before him to find a question of fact as to whether such a probability existed in this case.

The relevant question in the context of a seizure for the purpose of psychiatric assessment or treatment is whether the arresting officer has "probable cause to believe that the person is dangerous to himself or others." *Monday*, 118 F.3d at 1102. Notably, the cases in which this standard has been applied make it clear that the person must pose a relatively immediate or imminent threat of danger to himself or others—thus requiring emergency treatment—and not merely a hypothetical possibility of danger. *See id.* ("In this case, we agree with the District Court that Oullette had probable cause to believe that plaintiff was attempting to commit suicide, or at least might injure himself *if not taken to a hospital*." (emphasis added)); *see also Simon v. Cook*, 261 F. App'x 873, 881 (6th Cir. 2008) ("[P]robable cause requires only a 'probability or substantial chance' of dangerous behavior based on the circumstances of each case. Even if Simon did not present a substantial chance of immediate danger to Cook, his stated intent to follow the police and get to the bottom of the alleged attacks against him indicated a substantial chance of irrational and dangerous behavior in the *near future*."); *Glass v. Mayas*, 984 F.2d 55, 55–56 (2d Cir. 1993) (finding probable cause for mental health seizure in part because of reports that the plaintiff had been reported to be in possession of a gun, had threatened others with it, and

continued to be "verbally abusive, suspicious, paranoid, and showed impaired judgment"); *see id.* at 57 (holding that "the availability of qualified immunity turns on whether it was objectively reasonable for the defendants to believe, *at the time they examined Glass and in light of the information that they possessed*, that Glass was dangerous" (emphasis added)).

Tennessee's statutory scheme reinforces the conclusion that the threat of danger must be imminent to justify detention. *See, e.g.*, Tenn. Code Ann. § 33-6-403 (authorizing involuntary admission and detention by a hospital for "*emergency* diagnosis, evaluation, and treatment "IF AND ONLY IF," among other things, the person "poses an *immediate* substantial likelihood of serious harm, under § 33-6-501, because of the mental illness or serious emotional disturbance" (capitalization in original; italics added)); *id.* § 33-6-501 (defining "substantial likelihood of substantial harm" to include a situation where the person "has placed others in reasonable fear of violent behavior and serious physical harm to them" *and* "there is a substantial likelihood that the harm will occur unless the person is placed under involuntary treatment").

The record before the court wholly substantiates Judge Brown's determination that a reasonable factfinder could conclude that the defendants lacked probable cause to seize Reeners under this standard. The defendants, in fact, have failed to point to *any* evidence in the record to support the conclusion that, at the time Reeners was taken into custody, he posed an imminent threat of danger to himself or others, or even a danger in the "near future," *Simon*, 261 F. App'x at 881, as opposed to a hypothetical threat of possible danger to others in the indeterminate future if he actually did "snap," as Rosemary Bates had been predicting for several years. (*See* Doc. No. 125, Bates Aff. ¶ 10.)

Second, the court concurs with the magistrate judge's conclusion that there is at least a question of fact as to whether it was reasonable for the individual defendants to rely on the

opinion and actions of Emily Cecil in this case. The facts strongly suggest that the reliance in this case was circular: Cecil's written request for an emergency admission was based on her having been told that "[l]aw enforcement believes he's a danger to the community" (Doc. 162, at 20 ¶¶ 70-71), while law enforcement justified the commitment based on Cecil's requesting emergency admission. The magistrate judge did not err in concluding that the applicable case law requires an examination of the totality of the circumstances. *See, e.g.*, *Simon*, 261 F. App'x at 881 (requiring an examination of the " 'probability or substantial chance' of dangerous behavior based on the circumstances of each case"); *Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000) ("Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest. In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." (internal quotation marks and citations omitted)).

Under the totality of the circumstances presented here, a reasonable factfinder could conclude that it was not reasonable for the police officers to rely on Cecil's decision, particularly given that (1) Cecil is not a doctor of any kind and apparently never explained her credentials to the police officers; (2) she appeared to have relied entirely on the police to reach the opinion that the plaintiff should be detained, (3) as the magistrate judge noted, the standards for admission under which Cecil was operating, which she articulated to the plaintiff in the police officers' presence, should have placed a reasonable police officer on notice that she was applying an illegal standard—under state and federal law (*see* Doc. No. 177, at 21–22), and (4) as set forth above, a reasonable factfinder could easily conclude that the information in the officers' possession was not sufficient to permit them to conclude that Reeners posed an imminent threat of danger to himself or others at the time he was taken into custody.

Finally, the magistrate judge's findings of fact are well substantiated by the record:

1. The defendants complain that, contrary to the magistrate judge's findings, there is "no evidence that Officer Troup gave Emily Cecil false or exaggerated information about Reeners being a possible threat that may have tainted her opinion." (Doc. No. 184, at 12.) They insist that "nothing was submitted by the plaintiff or appears in the record to show that" Reeners had *not* threatened public officials and had *not* been charged with harassment. (*Id.*) They ask, "If these events did not take place, yet were mentioned in a recording of a conversation between Defendant Troup and Emily Cecil, why was evidence not submitted by plaintiff that these events did not take place?" (*Id.*)

In responding to the defendants' objections, the plaintiff first points out that the record includes his statements to Cecil that he had never been arrested for harassment or threatened public officials, to which the defendants never posed a hearsay objection. In addition, however, he also submitted a late-filed Declaration attesting to the same facts under oath. (Doc. No. 191-1.)[2] The court finds that, even without that evidence, the record gives rise to a question of fact as to whether Troup himself had a reasonable basis for believing that Reeners had been arrested for harassment or, indeed, that he had ever threatened physical harm to anyone at the time he was seized. The evidentiary record readily permits a reasonable finder of fact to conclude that Troup's account of the plaintiff's background to Cecil exaggerated the plaintiff's symptoms as

---

[2] The defendants filed a Motion to Strike the plaintiff's Declaration (Doc. No. 194), in response to which the plaintiff pointed out that Rule 72(b)(3) of the Federal Rules of Civil Procedure expressly permits the district court to receive further evidence in resolving objections to a report and recommendation. The court thereafter denied the Motion to Strike and granted the defendants' Motion to Consider Additional Evidence. The defendants submitted the Declaration of former Tennessee State Representative Debra Maggart. (Doc. Nos. 195, 196, 197.) Maggart's declaration creates a disputed question of fact as to whether Reeners had harassed Maggart, but it does not establish that Troup knew about Reeners' previous contacts with Maggart at the time of the seizure. In fact, Maggart states that Troup contacted her in January 2016, well after the June 2014 incident giving rise to this lawsuit. (Doc. No. 198 ¶ 16.)

well as the possibility that he posed a threat to himself or others.[3]

2.      Contrary to the defendants' assertions, the magistrate judge did not find that Cecil lacked a basis to conclude that Reeners was a threat simply because he denied that he was a threat and did not appear to pose a threat during his interview at the hospital. Moreover, as set forth above, based on the totality of the circumstances, there is at least a question of fact as to whether it was reasonable for the police officers to rely on Cecil's opinion in this case, particularly as it appears that her determination that Reeners should be detained amounted to a "rubber stamp" of the officer's previously expressed opinion that he posed a danger to others. *Accord Fry v. Robinson*, 678 F. App'x 313, 318–19 (6th Cir. 2017) (noting that, "[w]hile the clerk's approval [of a warrant application] is a relevant consideration [in the determination of whether probable cause supports an arrest], its relevance is based on trusting [the clerk] will not merely rubber-stamp the warrant application" (internal quotation marks and citation omitted)).

3.      The magistrate judge did not take judicial notice that police officers never hire mentally disturbed people as confidential informants. Instead, he reasonably concluded that the entire half-hour conversation that took place while Cecil was talking on the phone, which included one officer's offering Reeners the opportunity to serve as a confidential informant, constituted further evidence that a reasonable officer would not have concluded that Reeners posed an imminent threat to himself or others at the time of his seizure.

4.      The magistrate judge correctly concluded that there was at least a question of fact as to whether Dr. Bradley even examined the plaintiff prior to reaching the conclusion that he

---

[3] Although, as the defendants point out, the plaintiff had made several disturbing posts on social media, including the GPD's Facebook page, the plaintiff has also correctly observed that there is no evidence that the individual defendants were aware of those posts at the time they detained the plaintiff. Consequently, the posts could not have informed the defendants' "probable cause" assessment.

should be detained and, therefore, that his opinion was entitled to little weight, at least at the summary judgment stage. The later decisions regarding Reeners' involuntary commitment could not have influenced the police officers' decision to arrest him and, therefore, are irrelevant to the question of whether probable cause existed at the time of the detention. In this case, unlike in *Simon v. Cook*, the later decisions by doctors do not "dovetail" with other evidence that actually supports an objective finding of probable cause and, therefore, do not constitute evidence of the objective reasonableness of the officers' probable cause determination. 261 F. App'x at 881.

The court finds no merit to any of the defendants' objections.

## IV.     The Plaintiff's Objections

The plaintiff objects to the magistrate judge's finding that he did not present evidence that Chief Bandy caused or prolonged his detention at MTMHI on the basis that: (1) "any lack of evidence was caused by the Court's discovery stay," which the court should remedy by denying the motion for summary judgment with leave to refile at the conclusion of discovery; and (2) "even the limited record available was sufficient to demonstrate for summary judgment purposes that Bandy caused the commitment." (Doc. No. 185, at 1.)

The first argument is a non-starter. In his response to the Motion for Summary Judgment, the plaintiff never argued that he was hampered by the discovery stay or needed additional evidence and, in fact, affirmatively asserted that the evidence in the record was sufficient to warrant denial of the defendants' motion. (*See, e.g.*, Doc. No. 153-1, at 25, Pl's Resp. to Defs.' Statement of Undisp. Facts ¶ 47.) Moreover, under Rule 56, the court may grant a nonmovant's request that the court defer ruling on an issue if the party "shows by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition" to the motion. Fed. R. Civ. P. 56(d). The plaintiff did not comply with that procedure here and did not raise this

argument at all until the magistrate judge recommended partial summary judgment. The court finds that the plaintiff waived his claim that he was prejudiced by the lack of discovery by not raising it sooner.

The court also rejects the plaintiff's contention that the evidence in the record is sufficient to support his false imprisonment claims against Bandy. In his original response to the defendants' Motion for Summary Judgment on the claims against Bandy, Reeners argued only that Bandy contributed to Reeners' prolonged detention at MTMHI by "conspiring[4] with his Lieutenants to get Mr. Reeners committed, and then by faxing the June 13th letter directly asking MTMHI to conduct 'in-depth psychological evaluations and treatments.'" (Doc. No. 146, at 18 (quoting Doc. No. 127-3, June 13, 2014 Letter from Bandy to MTMHI).) He stated conclusorily, regarding Bandy's involvement, only that

> Cecil, SRMC, and MTMHI all relied on [Troup's unfounded] claims as the primary basis of their respective decisions to commit Mr. Reeners, and in the process ignored their independent findings that Reeners was not dangerous. Thus, Bandy was an accomplice to the illegal commitment, and to MTMHI's decision to prolong it for a full six days.

(Doc. No. 146, at 18–19 (internal citations to the record omitted).) In light of the timing of the letter, the magistrate judge did not err in concluding that this evidence was insufficient to conclude that Bandy personally had any involvement in MTMHI's initial decision to detain Reeners or in MTMHI's failure to release him prior to June 18.

The case the plaintiff primarily relies upon, *Miller v. Maddox*, 866 F.3d 386 (6th Cir. 2017), does not aid his cause. That case applied established law to conclude that, to proceed on a malicious prosecution claim, the plaintiff "must first establish that a criminal prosecution was initiated against her and that [the defendant] made, influenced, or participated in the prosecution

---

[4] As the defendants point out, the operative Complaint does not contain a conspiracy claim.

decision." *Id.* at 390 (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)).[5] There, it was clear that the defendant's affidavit was submitted to the night commissioner and that the defendant was the only witness who testified at the preliminary hearing. The court found on the basis of that evidence that the defendant "at least influenced or participated in the prosecution decision." *Id.* at 391. Here, the letter Chief Bandy submitted to MTMHI was received after the order of commitment had already been entered and, therefore, could not have influenced the initial decision to detain Reeners.

The court also notes that the plaintiff has not actually argued or shown that Bandy's letter contained false or inaccurate statements of the type that will support a false arrest or false imprisonment claim. The letter articulates concerns about Reeners' "erratic and sometimes very agitated behavior" that had become "increasingly disturbing and obsessive" and Bandy's desire to ensure that his employees and others "are not placed in a state of fear" by Reeners' behavior, but the letter does not claim that Reeners had violent tendencies or that he posed an imminent threat of harm to himself or others. (Doc. No. 127-3, at 1.) In addition, after Reeners was committed at MTMHI, it then became the treating practitioners' obligation to ascertain whether Reeners continued to meet the criteria for ongoing commitment. Those practitioners are not defendants in this case, and the question of whether they met their obligations is not before the court.

In short, the court finds no merit to the plaintiff's objections either.

## V.     Conclusion and Order

The court has conducted a *de novo* review of the record in its entirety and finds that the

---

[5] A malicious prosecution claim also requires proof that there was no probable cause to support the charges; the plaintiff "suffered a deprivation of liberty 'apart from the initial seizure'; and the criminal proceedings terminated in her favor. *Miller*, 866 F.3d at 389 (quoting *Sykes*, 625 F.3d at 308–09)).

R&R accurately summarizes the facts and correctly states the law as applied to the arguments in the defendants' Motion for Summary Judgment. Finding no error, the court **OVERRULES** both the defendants' objections set forth in their Motion for Review (Doc. No. 184) and the plaintiff's Objections (Doc. 185). The court **ACCEPTS** and **ADOPTS** the magistrate judge's Report and Recommendation in its entirety as this court's findings of fact and conclusions of law. The defendants' Motion for Summary Judgment (Docket No. 121) is GRANTED as to counts IV and V that Defendant Bandy violated the Fourth Amendment and Tennessee state common law by prolonging Reeners' stay at MTMHI, but DENIED as to all other remaining defendants and claims.

This case is returned to the Magistrate Judge for further handling under the original referral order.

It is so **ORDERED**.

Enter this 1st day of May 2018.

ALETA A. TRAUGER
United States District Judge